IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Valerie Greene, | ) | C/A No.: 5:20-02153-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| Commissioner of the Social Security | ) | |
| Administration, [1] | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.     Relevant Background

   A.     Procedural History

On November 30, 2016, Plaintiff protectively filed for SSI alleging she became disabled on January 1, 2014. Tr. 79–90. After being denied initially, Tr. 91, and upon reconsideration, Tr. 105, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 121. The ALJ conducted a hearing on April 9, 2018. Tr. 40–76.[2] The ALJ denied Plaintiff's claim in a decision

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.
[2] Plaintiff initially appeared for a hearing before the ALJ on July 26, 2018, however, the hearing was continued so Plaintiff could obtain a representative. Tr. 28–39.

dated May 1, 2019. Tr. 9–27. Plaintiff requested review of this decision from the Appeals Council. Tr. 220–22. On April 7, 2020, the Appeals Council denied the request, Tr. 1–6, making the ALJ's May 1, 2019 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed June 5, 2020. ECF No. 1.

       B.       Plaintiff's Background

Plaintiff was born on July 11, 1974 and was 42 years old at the time of her alleged onset date of January 1, 2014. Tr. 259. In her January 24, 2017 Disability Report-Adult form, Plaintiff indicated she completed her GED in 2003, and did not attend special education classes or complete any type of specialized job training. Tr. 252. Plaintiff further indicated that, in her past relevant work ("PRW"), she worked in catering and a restaurant. Tr. 253. Plaintiff indicated she stopped working on January 1, 2014, because of her conditions which she identified as mental issues, PTSD, pain, sprained wrist, bi-polar disorder, schizophrenia, herniated disc, lumbar spine and neck. Tr. 251–52. Plaintiff indicated that she was 5'3" tall, weighed 150 pounds, and her conditions caused her pain or other symptoms. Tr. 251.

In a Disability Report-Appeal dated October 4, 2017, Plaintiff indicated a change in her medical condition that occurred on July 28, 2017. Tr. 326. Plaintiff indicated her mental illness had worsened, but she did not have any new physical or mental conditions. *Id.* Plaintiff also indicated changes to her daily activities due to her physical and mental conditions. Tr. 329. She noted she had difficulty doing everyday functions such as grooming, dressing, and filling out paperwork. *Id.*

C.    Administrative Proceedings

On April 9, 2019, Plaintiff appeared with counsel at an administrative hearing in Columbia, South Carolina, and testified regarding her application for SSI. Tr. 40. Vocational Expert ("VE") Jacqueline Kennedy-Merritt also appeared and testified. *Id.*

1.    Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff confirmed her name and her current address.  Tr. 48. Plaintiff testified she last worked in 2005 in catering where she set up banquets, served food, and cleaned up. Tr. 49.  Plaintiff stated she also worked as a cashier in a cafeteria. Tr. 50. Plaintiff testified while she worked at these jobs she lifted items that weighed between 10 to 20 pounds, and stood and walked over six hours a day. Tr. 51.

Plaintiff stated she is 5'3" tall, weighs 170 pounds, but she has gained weight in the past two years, and her usual weight is 125 pounds. Tr. 53–54. Plaintiff testified she has a GED. Tr. 54. Plaintiff stated her worst problem that keeps her from working is her racing thoughts and trouble concentrating. Tr. 54. Plaintiff said this affects her two to three times a day, lasting from five to ten minutes. Tr. 54–55.  Plaintiff indicated it was difficult to explain how she feels during those five to ten minutes, noting she does not have any physical symptoms. Tr. 55. Plaintiff testified she is anxious a lot and her breathing changes and her chest hurts. *Id.* Plaintiff stated she is forgetful and gets easily sidetracked and has a hard time focusing when she is cooking or doing other things which causes her to not complete her tasks. *Id.* Plaintiff testified she is tired all the time, has no motivation, and wants to lie down all the time. Tr. 56. Plaintiff says she lies down or takes 30 minute to one hour nap two to three times a day. *Id.* Plaintiff testified she has a lower back injury that hurts all the time, with the pain being a six or seven on a ten-point scale Tr. 56–57. Plaintiff states she takes over-the-counter medication for her back, trazadone to sleep, and

injections of Invega Sustenna once a month to help her not hear voices. Tr. 57. Plaintiff testified she cannot work in the catering industry due to "mainly my back and I probably couldn't concentrate on what it is that I was doing. I'd probably make a lot of mistakes." *Id*. Plaintiff testified these problems would affect any work she was trying to do. Tr. 57–58. Plaintiff stated she does not have other physical problems with her ability to function on a daily basis but her neck gets stiff once in a while. Tr. 58. Plaintiff testified she is depressed about her condition and she feels hopeless sometimes. *Id*. Plaintiff said two to three times a day she has panic attacks that lasts 10 to 20 seconds where her chest hurts and she has trouble breathing. *Id*. Plaintiff said the attacks are random and are aggravated if she is asked to do a lot of things at once, so she has to go at her own pace. Tr. 59. When asked what she does on a daily basis, Plaintiff says she wakes up between 6 to 9 a.m., makes a cup of coffee, and tries to clean a little. *Id.* Plaintiff testified she really does not feel like cleaning most of the time but she does it anyway because it needs to be done. *Id*. Plaintiff said she is tired and has no energy since she started her injections and she wants to sleep all day. Tr. 60. Plaintiff testified that she takes a nap about once a day for an hour. *Id*. Plaintiff said that during the day she gets on the computer or watches television. *Id*. Plaintiff stated she lives with her mother who is retired. *Id.*

In response to the ALJ, Plaintiff testified she can do all her personal grooming and hygiene independently. Tr. 61. Plaintiff stated her mother is in good health and does not need any help with her care. *Id.* When asked about her ability to "power [her] way through" chores, Plaintiff testified that she sweeps, washes the dishes, mops, takes out the trash  and does laundry, but she does not do yardwork and her mom pays someone to do it. Tr. 61–62. Plaintiff said she cooks and microwaves a frozen dinner and she uses the stove to make eggs or noodles. Tr. 62–63. Plaintiff testified she is able to drive but her license is suspended so her mom or a friend gives her a ride.

App. 63. Plaintiff said she is able to shop for groceries and "other stuff" and she goes to the store once a month. Tr. 64.  Plaintiff testified she gets anxious when she is around a lot of people and has a task she needs to accomplish. *Id*. Plaintiff said she is usually able to complete her shopping but every now and then she leaves before she finishes, with the last time being a couple of months ago. Tr. 65. When asked about this shopping trip, Plaintiff said she was getting her groceries when she began to she feel "crowded," her thoughts started racing, and she started to have a panic attack, so she left. *Id*. Plaintiff was asked about her past drug use, and she testified she last used drugs three years ago. Tr. 65–66. Plaintiff said since she stopped using drugs, she is thinking clearer although she still has problems concentrating but she does not feel like she is living in a fog. Tr. 66. Plaintiff stated she started Invega  injections in January 2017,  and she has not heard any voices or had hallucinations in two years. Tr. 66–67.  Plaintiff testified she takes Cogentin daily to help with the side effects from Invega. Tr. 67.  Plaintiff says she has tremors in her hands that last seconds and has restless legs symptoms every night that affect her ability to sleep but the Trazodone helps. Tr. 68. Plaintiff testified she has not seen anyone recently for her back and she takes Ibuprofen daily. Tr. 68–69. Plaintiff said the pain is in her lower back, runs down her left leg, and the pain is constant. Tr. 69. Plaintiff testified she last had x-rays or MRIs in 2009.  Tr. 69–70.

    2.  VE's Testimony

The VE described Plaintiff's past work as caterer helper, Dictionary of Occupational Titles ("DOT") number 319.677-010, SVP 3, light exertion; and waiter/waitress, DOT number 311.477-026, SVP 4, light exertion. Tr. 71–72.  The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience with the following limitations:

this individual would be limited to medium levels of exertion as defined within the DOT and the SCO, except this individual can frequently balance, stoop, kneel, crouch, crawl; can climb ladders, ropes, scaffolds, ramps, and stairs; in addition, this individual remains capable of simple, routine tasks, consistent with a reasoning development level of 2 or less as defined in the DOT in an environment that would be free from production-rate pace such as that seen on assembly line and that would require no more than occasional changes in work setting or duties; this individual can frequently interact with supervisors; this individual can occasionally interact with coworkers and can work in proximity to them, but cannot engage in direct teamwork or tandem tasks and what I mean by that by way of definition, the individual must be able to complete his or her own work tasks independently; this individual can occasionally interact with the public; in addition, this individual will be off task for 10% of the workday and that would be exclusive of any regularly-scheduled breaks that an employer may provide.

Tr. 72. The ALJ asked if the hypothetical individual could perform any of Plaintiff's prior work, and the VE responded that the individual could not. Tr. 73. The ALJ then asked if there would be any other jobs within the national economy that an individual with those limitations could perform, and the VE identified the following jobs: counter supply worker, DOT number 319.687-010, SVP 2, with approximately 120,000 in the national economy; cleaner, DOT number 919.687-014, SVP 1, with 100,000 in the national economy; and polisher, DOT number 761.684-026, SVP 2, with 53,000 in the national economy. *Id.*

For the second hypothetical, the ALJ asked the VE to assume the same individual from hypothetical one, but the individual would also be off task for 20% of the workday, exclusive of regularly scheduled breaks, and the individual would be absent from work three days each month on an unscheduled basis. *Id*. The VE confirmed that the individual would be unable to perform Plaintiff's past work or any other jobs in the national economy. Tr. 74. The ALJ then asked whether an individual like Plaintiff, who had some semiskilled work in the past with the catering and banquet waitress positions, had any skills that would transfer over to the work within the parameters of hypothetical number two or would the 20% off task and three days monthly

absences, be prohibitive. *Id*. The VE testified that "there would be no transferability from a 3 or 4

SVP, but also with the off task and the unscheduled absences, that would preclude work in itself."

*Id*. The VE confirmed that her testimony was consistent with the DOT, however

> such characteristics as interacting with coworkers and supervisors, production-rate
> pace of work, as well as teamwork or tandem tasks, an individual being off task as
> well as unscheduled absences, and also transferability, Your Honor, those
> characteristics were testified to based on a reasonable degree of vocational certainty
> as a result of my education, training, and also experience in working with
> employers, job search, as well as job placements.

Tr. 74–75.

Plaintiff's counsel asked the VE whether an individual who is 15% off task would be

preclusive of work, and the VE stated that it would. Tr. 75. With nothing further, the hearing

closed. Tr. 76.

II.    Discussion

A.    The ALJ's Findings

In his May 1, 2019 decision, the ALJ made the following findings of fact and conclusions

of law:

> 1.    The claimant has not engaged in substantial gainful activity since November
>        30, 2016, the application date (20 CFR 416.971 *et seq.*).
>
> 2.    The claimant has the following severe impairments:  degenerative disc
>        disease of the lumbar spine, schizoaffective disorder, bipolar type, and post-
>        traumatic stress disorder (20 CFR 416.920(c)).
>
> 3.    The claimant does not have an impairment or combination of impairments
>        that meets or medically equals the severity of one of the listed impairments
>        in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925
>        and 416.926).
>
> 3.    After careful consideration of the entire record, the undersigned finds that
>        the claimant has the residual functional capacity to perform medium work
>        as defined in 20 CFR 416.967(c) except the claimant can frequently balance,
>        stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and

7

stairs. She remains capable of simple, routine tasks consistent with a reasoning development level of two or less, as defined in the DOT, in an environment free from production-rate pace, such as an assembly line, and that requires no more than occasional changes in work setting or duties. She can frequently interact with supervisors. She can occasionally interact with co-workers and work in proximity to them, but cannot engage in direct teamwork or tandem tasks (i.e., she must be able to complete work tasks independently). She can occasionally interact with the public. She will be off-task for ten percent of the workday, exclusive of regularly scheduled breaks.

5.  The claimant is unable to perform past relevant work (20 CFR 416.965).

6.  The claimant was born on January 11, 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 30, 2016, the date the application was filed (20 CFR 416.920(g)).

Tr. 12–22.

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id; Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to try these cases de novo or "resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

As an initial matter, the undersigned notes Plaintiff's brief presents the issues and arguments raised in a perfunctory and conclusory manner, while failing to offer little to no citation to the record. *See* ECF Nos. 22, 25. The court is not required to rummage through the

11

administrative record to construct and present a well-supported position for Plaintiff. *See Hayes v. Self-Help Credit Union*, No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting that it is not the role or responsibility of the court to perform the research needed to support or rebut a perfunctory argument); *Hensley v. Price*, 876 F.3d 573, 581 n.5 (4th Cir. 2017) (explaining "it is not [the court's] job to wade through the record and make arguments for either party."). Courts have held that when a plaintiff raises an issue in a such a manner, the issue is deemed waived. *See Parms v. Colvin*, No. 1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting the "Court need not address . . . perfunctory arguments by counsel). Despite the perfunctory and conclusory nature of Plaintiff's arguments, the undersigned addresses the following issues that appear to be raised in Plaintiff's briefs.

### 1. Listing 12.03

Plaintiff argues her diagnosis of schizoaffective disorder with bi-polar features, panic attacks, and severe anxiety with attendant functional restrictions, combined with her IQ of 73 and WRAT score equivalent and slow processing speed, satisfies or medically equals the criteria of Section 12.03 of the listings. ECF No. 22 at 3.

The Commissioner contends Plaintiff has not met her burden to prove her impairments satisfy the requirements of Listing 12.03. ECF No. 24 at 8–12.

At Step Three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986). In *Cook*, the court held that the ALJ should "have compared each of the listed criteria to the

evidence of [the claimant's] symptoms.  Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* at 1173.

Listing 12.03 concerns "schizophrenia spectrum and other psychotic disorders" and contains A, B, and C criteria. *See* 20 C.F.R. 404, subpt. P, app. 1, § 12.03. Listing 12.03 may be satisfied if the claimant satisfies the "paragraph A" and "paragraph B" criteria or the "paragraph A" and "paragraph C" criteria. *Id*. To satisfy the "paragraph B" criteria, the mental impairments must result in either an "extreme" limitation in at least one or a "marked" limitation in at least two of the following four areas of mental functioning: (1) difficulties in understanding, remembering, or applying information; (2) difficulties in interacting with others; (3) difficulties in maintaining concentration, persistence, or pace; or (4) difficulties in adapting or managing oneself. 20 C.F.R. Part 404, subpt. P, app. 1, § 12.03. A "marked limitation" occurs when "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00.F.2. An "extreme limitation" occurs when a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ discussed the "paragraph B" and "paragraph C" criteria in his decision. Tr. 15–16. In finding that Plaintiff did not meet the criteria of "paragraph B," the ALJ determined Plaintiff had a moderate limitation in in understanding, remembering, or applying information. Tr. 15. The ALJ cited to Plaintiff's full scale IQ score of 73, which was classified in the borderline range. Tr. 15. The ALJ noted Plaintiff reported she was going well after received treatment and that Plaintiff's memory was also normal at multiple exams. *Id*. The ALJ determined Plaintiff had a moderate limitation in interacting with others Tr. 16. The ALJ acknowledged Plaintiff was psychiatrically hospitalized for psychotic behavior, but observed she improved with treatment.  *Id.* The ALJ also

indicated Plaintiff was cooperative and maintained eye contact. *Id.* The ALJ determined Plaintiff had moderate limitations with concentrating, persisting, or maintaining pace. *Id.* The ALJ noted Plaintiff reported having difficulty focusing and her ability to pay attention and concentrate was mildly impaired. Tr. 16.  The ALJ indicated  Plaintiff was easily distracted and she exhibited a very low processing speed score, but observed Plaintiff's thought process and anxiety improved with treatment and her delusions were less prominent, and Plaintiff reported she was doing well after receiving treatment. *Id.* The ALJ determined Plaintiff had moderate limitations in adapting or managing oneself. Tr. 16. The ALJ noted Plaintiff was psychiatrically hospitalized for psychotic behavior, and remarked that Plaintiff's thought process and anxiety improved with treatment and her delusions were less prominent. *Id.* The ALJ noted Plaintiff has socially appropriate appearance and was appropriately groomed and there was no evidence of suicidal ideation. *Id.*

The ALJ also found Plaintiff did not meet the C criteria, explaining:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes on the claimant's environment or to demands that are not already part of the claimant's daily life.

*Id.*

Plaintiff cites to the results of her IQ test and argues the psychological evidence establishes she is disabled by medically meeting Listing 12.03. ECF No. 25 at 1–2. Plaintiff, however, has failed to develop this argument. She has not specifically identified what part of the listing or paragraph A, B, or C the ALJ failed to properly evaluate.[4] Nor has Plaintiff identified any

---

[4] Although Plaintiff argues her low IQ should operate as a presumption of disability without the necessity of further inquiry, ECF No. 25 at 2,  Plaintiff has failed to identify a listing or cite to any case law that concludes that an IQ of 73 meets the presumption of disability.

documents, medical records, testing, or anything else in the record to support her claims. After reviewing the record, the undersigned finds the ALJ made detailed findings in his Decision concerning Plaintiff's mental impairments, accordingly there is substantial evidence to support the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. It is, generally, the responsibility of the ALJ to decide the legal question of whether a Listing is met by a claimant's impairments. *See* SSR 96-6p. This allegation of error is dismissed.

>      2.    The ALJ's RFC Assessment

Plaintiff challenges the ALJ's residual functional capacity ("RFC") assessment arguing the evidence in the record "substantiates significant potential problems with attendance and inability to concentrate on work related functions." ECF No. 22 at 5.

The Commissioner contends substantial evidence supports the ALJ's RFC. ECF No. 24 at 12–14.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(3) and (4). Social Security Ruling 96–8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss

the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Plaintiff argues substantial evidence establishes Plaintiff "is incapable of sustained work activity" due to her combined physical and mental impairments "and attendant residuals." ECF No. 22 at 5. Plaintiff contends evidence "substantiates significant potential problems with attendance and inability to concentrate on work related functions ('off task')." *Id.* Plaintiff says the ALJ made a cursory reference to the "off-task situation" but he provided "no further analysis of this evidence and the additional evidence in regard to the higher 15% to 20% off task ratio contained in this second hypothetical and follow up questioning." *Id.* at 6.

At Step Three of the sequential evaluation process the ALJ determined Plaintiff had the RFC to perform medium work with certain exertional, postural, and mental limitations. Tr. 16-17. The RFC limited Plaintiff to "simple, routine tasks consistent with a reasoning development level or two or less, as defined in the DOT, in an environment free from production-rate pace and that requires no more than occasional changes in the work setting or duties." Tr. 16. The RFC also noted Plaintiff would be "off-task for ten percent of the workday, exclusive of regularly scheduled breaks." Tr. 17. The ALJ stated in making his RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.229 and SSR 16-3p." *Id.*

As part of his RFC determination, the ALJ considered Plaintiff's testimony and her reported symptoms, the objective medical findings, and medical source opinions. Tr. 17–20.  The

16

ALJ discussed Plaintiff's allegations in her Function Report, hearing testimony, her IQ test, and the WRAT4 testing concerning her mental limitations. Tr. 17–18. The ALJ then discussed the medical evidence related to Plaintiff's mental impairments including Plaintiff's hospitalization for psychotic behavior and her subsequent treatment records. *Id*. The ALJ also considered opinion evidence from state agency consultants, examining and treating physicians, consultive examiners, and lay opinions. Tr. 19–20.

Although Plaintiff complains the RFC did not accurately reflect her physical and mental limitations and her inability to stay on task, Plaintiff has not cited to any medical records, opinion evidence, her own testimony, or anything else in the record that would support her claimed mental limitations. The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). Here, the ALJ has satisfied that requirement by discussing the medical findings made throughout Plaintiff's treatment history and the results of testing and examinations. *See* Tr. 17–20. The ALJ also explained how the objective evidence he cited to supported his RFC Assessment, and he discussed Plaintiff's alleged symptoms and whether they were inconsistent with the medical evidence, and the weight he gave to the opinion evidence and why he assigned that weight. *Id.* The predominant issue raised in Plaintiff's briefs is whether there is substantial evidence to support the ALJ's decision that Plaintiff will only be off-task for ten percent of the workday. ECF Nos. 22, 25. The court finds the ALJ's finding of Plaintiff's mental limitations, including Plaintiff being ten percent off task was discussed in the RFC narrative and citation to substantial evidence was made by the ALJ. *Ladda v. Berryhill*, 749 F. App'x 166, 173 (4th Cir. 2018) (finding remand unnecessary when the ALJ assessed the plaintiff's capacity to

perform relevant functions and when the record in the case was adequate). This allegation of error is dismissed.

### 3.  Reliance on VE's testimony

Plaintiff argues "the jobs which exists in numbers in the national economy and all other vocations would not accommodate  the manifestation of Plaintiff's cited impairments." ECF No. 22 at 5.  Plaintiff contends the ALJ offered multiple hypotheticals which posited a greater degree of off-task limitations and absenteeism than what was adopted in the RFC, and the ALJ failed to explain why he chose one hypothetical over the other. ECF No. 25 at 2.

The Commissioner contends the ALJ accounted for all of Plaintiff's credibly established limitations in his RFC assessment. ECF No. 24 at 14–16.

At Step Five of the sequential evaluation, the Commissioner bears the burden to provide proof of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The VE's testimony is offered to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record" and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. *Johnson*, 434 F.3d at 659. An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

Although Plaintiff appears to argue the ALJ's hypothetical did not conform with the evidence in the record, Plaintiff has failed to cite to anything in the record that supports her claim

that a greater degree of off-task limitations and absenteeism should have been included in the RFC. The undersigned finds the ALJ considered the evidence in the record, including Plaintiff's testimony, the medical records, and the opinions of Plaintiff's treating, examining, and reviewing medical providers, and made an RFC determination which included limitations to medium work, simple routine tasks, and off-task for ten percent of the workday, exclusive of regularly scheduled breaks. Tr. 16–20.  While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the questions need only reflect those impairments supported by the record. *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987)). However, the ALJ was not obligated to accept or rely on the VE's testimony in response to limitations that are not supported by the record. *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W. Va. Mar. 7, 2014). Because there was substantial evidence that supports the ALJ's RFC assessment, the undersigned finds the record did not compel the ALJ to include additional limitations in his hypothetical questions to the VE. This allegation of error is dismissed.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

February 14, 2022                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge